In the Matter of BURAL URBAN HOME REMODELING CORP., Petitioner, v NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS, Respondent.

First Department, June 24, 1980

## APPEARANCES OF COUNSEL

*Richard Joannides* for petitioner.

*Marjorie E. Bornes* of counsel *(Ronald E. Sternberg* with her on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for respondent.

**OPINION OF THE COURT**

KUPFERMAN, J.

The determination of the Department of Consumer Affairs should be confirmed. The petitioner has not made the required showing to warrant an annulment of the determination inasmuch as there is sufficient evidence in the record to support the action taken by the department.

In July, 1977, petitioner contracted with complainant Walter Bartley to install 20 aluminum-framed replacement windows in Mr. Bartley's home. Petitioner's sales literature specifically stated, and there was testimony that petitioner's salesman (deceased at the time of hearing) had represented, that the new windows would keep the house warm, seal out cold air, be draft-free, and by saving fuel, reduce heating costs. Petitioner acknowledged and stands behind the representations of its sales literature. After installation, however, the Bartleys complained to petitioner of drafts from these windows, a cold home, and an accumulation of water on the inside track of the windows due to excessive condensation. When an adequate response on these matters was not forthcoming, the Bartleys made a formal complaint to the Department of Consumer Affairs. Petitioner does not contest that it made no attempt to service these particular complaints until well after the department's intervention.

The February 14, 1978 inspection conducted by a department inspector did confirm the cold air and condensation complained of, although the inspector did not conclude that faulty installation was the cause of these conditions. The inspector had conducted only a preliminary or cursory check on that date. His accompanying report made general statements concerning the process of condensation and the conductivity of metal and how these processes, under certain conditions found in many homes, could contribute to, or be the primary cause of, the problems here at issue. That inspection cannot be deemed conclusive. In any event, it did not foreclose the need for the more thorough inspection directed by the department to be conducted by petitioner.

It is worthy of note that only after the initial conference arranged by the department did petitioner agree to recheck the windows it installed and to include inspection behind the interior molding. Nonetheless, this agreed upon inspection was not performed by the petitioner.

There was conflicting testimony regarding the reasons for

an unsuccessful attempted service call in June, 1978. It was the duty of the department to weigh this conflicting evidence. *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176.) It did so and credited the Bartley version. Considering the absence of any action by petitioner to take appropriate steps at any other time, the department's crediting of the Bartley testimony cannot be reasonably termed erroneous as a matter of law. *(Matter of Sowa v Looney,* 23 NY2d 329, 335-336.)

In October, 1978, after another department inspection, the inspector reported that petitioner had agreed to recheck the windows installed by it and not replaced. (The Bartleys had eight windows replaced by another contractor.) In addition, petitioner had agreed to install Batt insulation into every opening or space on these windows. The report of the November 1, 1978 hearing also indicated that petitioner had agreed to these corrections. This agreed upon servicing was not performed. The agreement is sufficient justification for that portion of the department's determination directing compliance.

The Bartleys testified that they had replaced eight windows after the unsuccessful attempted service call in June, and after there was no further follow-up attempted by the petitioner. Furthermore, they testified that they had been informed by other companies they had consulted that petitioner's windows were not the proper size nor properly insulated, which would account for the problems. The department in its decision directed a refund for the proportional cost of these eight windows based on the lack of a good faith effort to service these windows.

The department had before it evidence of an unsatisfactory condition, of unresponsiveness by one pledged by its own agreement to service, and of a frustrated consumer resorting to another replacement, presumably of those windows where the problem was most serious, after being advised by other companies in the field that the cause was attributable to petitioner's work. It could consider the fact of petitioner's later agreement to install the Batt insulation and to recheck the remaining windows as evidence that these measures could have resulted in a satisfactory solution or indicated that new windows were necessary. In short, there is indeed a substantial basis upon the whole record for the department's decision.

The determination of the New York City Department of

Consumer Affairs dated November 27, 1978, as modified December 11, 1978, directing that petitioner refund $1,360 to complainant or suffer suspension of its home improvement license, should be confirmed, without costs.

SANDLER, J. (dissenting). In July 1977, petitioner contracted with complainant Walter Bartley to install 20 aluminum-framed replacement windows in Mr. Bartley's home. Petitioner's salesman, deceased at the time of the hearing, is alleged to have represented to complainant that the new windows would keep the house warmer, seal out cold air, and reduce heating costs. That winter, Mr. Bartley complained of condensation and drafts on and near the windows.

On February 8, 1978, the Department of Consumer Affairs (Department) advised petitioner of Mr. Bartley's complaint, and that a hearing would be scheduled if the matter could not be resolved. On February 14, 1978, the Department's inspector, Frank Sendyka, accompanied by complainant and petitioner's representative, examined the window installation and reported that the cold draft sensation felt near the windowsill was not a draft from outside, but rather a normal downward movement of the heavier air which is cooled by conductivity from the window on a cold winter day.

The condensation on the aluminum and glass on very cold days was also explained as a normal phenomenon resulting from contact between warm moist air and any cold surface such as a glass windowpane or its metal frame. The presence of condensation was a further indication that there was not a draft of cold air coming into the house from outside.

Despite the fact that the Department's own expert found no defects in the windows or their installation, on March 7, 1978, the Department issued a summons requiring petitioner to appear at the Department's office to answer Mr. Bartley's complaint that petitioner had violated subdivision 1 of section B32-358.0 of the Administrative Code of City of New York in that "the licensee without justification abandoned or wilfully failed to perform the contract; or wilfully deviated from the plans or specifications without the consent of the owner."

Conferences were thereafter held at the Department's offices on March 20 and July 26, 1978, at which attempts were made to settle the dispute. On petitioner's agreement to recheck the windows and insulation, it was recommended that the case be marked settled. When petitioner failed to recheck the win-

dows for reasons disputed by the parties, a formal hearing was held on November 1, 1978.

The hearing officer's report reveals that Mr. Sendyka inspected the windows on February 14 and October 28, 1978, on both occasions finding that the windows were properly caulked, and that there was no space between the casing and trim which would account for drafts reported by complainant. "In sum, the inspector finds the job to have been performed satisfactorily."

Despite these findings implicitly accepted by the hearing officer, which negative the charges contained in the summons, the hearing officer found that because petitioner failed to make a good faith effort to service the windows, complainant was forced to purchase eight new windows to replace those installed by petitioner. The Department's decision dated November 27, 1978 directs petitioner to pay complainant $1,140 as a refund for the eight windows or suffer suspension of its license. On December 11, 1978 the Department modified the amount of the refund to $1,360 to correct a mathematical error.

The conclusion reached by the hearing officer and the Department's subsequent decision are flatly contrary to the apparent factual determination, supported by the only competent disinterested evidence, that the work had been done properly. There is no factual finding, nor any substantial basis for such a finding, that a recheck of the windows would have affected a condition that required the complainant to purchase other windows.

We agree that the Department could reasonably find that petitioner had violated its undertaking under the tentative settlement and that such a breach would justify some remedial action. It is difficult to see how this finding justifies directing the refund of the full value of the newly purchased windows in the absence of any determination, or any factual basis for such a determination, that the windows were not properly installed and that a recheck would have corrected some defect. This seems particularly clear since the original settlement almost certainly represented an effort to give some measure of satisfaction to an aggrieved complainant whose complaint had not been sustained.

Accordingly, we think the determination should be annulled. We recognize that the Department's action may be supported on grounds not stated, such as the nature of the

representations originally made, or that the circumstances support some measure of disciplinary or remedial administrative action. Therefore, we would remand for whatever further proceedings may be appropriate.

FEIN and SILVERMAN, JJ., concur with KUPFERMAN, J.; MURPHY, P. J., and SANDLER, J., dissent in an opinion by SANDLER, J.

Determination of the respondent, dated November 27, 1978, confirmed, without costs and without disbursements.